IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 12-26-M-DLC |
| Plaintiff, | |
| vs. | FINDINGS & RECOMMENDATION |
| JACK HENRY SWEARINGEN, | |
| Defendant. | |

_____

I.  Introduction

Defendant Jack Henry Swearingen stands charged with two counts of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2). The charges are based upon evidence obtained by the United States as a result of the seizure and subsequent search by state probation authorities of computers, a thumb drive, and a CD belonging to Swearingen. Swearingen has moved to suppress the referenced

1

evidence, contending the warrantless seizure and subsequent warrantless search of the computers, thumb drive, and CD violated his right to be free from unreasonable seizures and searches as guaranteed by the Fourth Amendment to the United States Constitution.

An evidentiary hearing was conducted by the Court on November 20, 2012, with the parties being granted until November 30, 2012, to file post-hearing briefs. Upon review of the post-hearing briefs, the Court directed the parties to file supplemental briefs addressing the bearing which this Court's holding in *United States v. Swearingen*, Cause. No. 9:05-CR-0031-M (D. Mont. Nov. 7, 2005) has upon the motion to suppress.[1]

Based upon the evidence presented and the analysis detailed below, it is recommended that Swearingen's motion to suppress be granted.

**II.   Factual Background**

   A.   <u>General</u>

On September 9, 1992, the Defendant Jack Henry Swearingen was convicted in the Montana Fourth Judicial District Court, Missoula County, Montana, upon pleas of guilty, on two counts of sexually assaulting two minor children – both less

---

[1] A copy of that opinion was attached to this Court's order of December 3, 2012. Dkt. 47.

than 16 years of age.  Under an amended judgment entered September 21, 1992 ("the 1992 State Court Judgment"), Swearingen was sentenced to 20 years in prison on each count, with the sentences running concurrently.  The sentences, however, were suspended and Swearingen placed on supervised probation subject to numerous conditions.

A petition to revoke Swearingen's probation was filed on July 6, 2002.  And on August 9, 2002, the State District Court revoked the suspended sentences after Swearingen admitted to violating the conditions of his probation by, inter alia, having unsupervised contact with minor children by allowing them into his home.  Dkt. 19-4.  Swearingen was again sentenced to a term of imprisonment of 20 years on each of the sexual assault convictions, with the sentences running concurrently.  All but 1,784 days of the sentences were suspended and Swearingen was placed on supervised probation for the suspended portion of the sentences.  On July 30, 2002, Swearingen executed a document titled "Conditions of Probation and Parole" that delineated all of the various conditions to which his probation would be subject.[2]

---

[2] For purposes of completeness, the Court notes the judgment of August 9, 2002, set forth the conditions to which Swearingen's probation was subject.  The conditions do not differ materially from those set forth in the "Conditions of Probation and Parole" signed by Swearingen on July 30, 2002.  The parties effectively acknowledge that the conditions delineated in the "Conditions of Probation and Parole" are the conditions pertinent to the issue before the Court.

Among the conditions imposed were the following:

> 7. **Search of Person or Property:** Upon reasonable suspicion, as ascertained by the Probation and Parole Officer, my person, vehicle, and/or residence may be searched at any time, day or night, without a warrant by a probation/parole officer, [intense supervision probation] officer or a Law Enforcement Officer (at the direction of the probation/parole/ISP officer). I may also be searched at my place of employment. Any illegal property or contraband will be seized and will be destroyed.
>
> ...
>
> 15. No unsupervised contact with minors under 18 unless approved by [Probation Officer] and [Sex Offender] therapist.

Dkt. 16-4, at 2.

It is imperative to note that there were no conditions imposed on Swearingen's probation that precluded him from possessing or using computers or any other electronic storage devices, accessing the internet, or possessing legal pornography.

B. The 2005 Indictment

On June 20, 2005, an indictment was filed in this Court charging Swearingen with receipt and possession of child pornography in violation of Title 18 U.S.C. §§ 2252A(a)(2) & (a)(5)(B). *U.S. v. Swearingen*, Cause No. 9:05-CR-0031-M. The following recitation of facts is taken from the Court's opinion filed in that case on November 7, 2005. *Supra*, n. 1.

4

The charges against Swearingen emanated from an investigation by agents of United States Immigration and Customs Enforcement of a child pornography website. The agents discovered evidence – Swearingen's credit card number, email address, and home address – suggesting Swearingen had subscribed to the website two years earlier. When the United States Justice Department concluded that the evidence was too stale to establish probable cause for a warrant to search Swearingen's home, the agents made contact with the Missoula County, Montana Probation Office, which was supervising Swearingen's probation under the 1992 State Court Judgment. Specifically, the agents contacted probation officer David Sonju, who, along with his supervisor, agreed to conduct a warrantless search pursuant to the 1992 State Court Judgment which provided, in pertinent part:

> 4. That the defendant shall submit himself, his vehicle, and his residence to search at any time by lawful authorities upon reasonable request of his Probation Officer.

Sonju, accompanied by the federal agents, went to Swearingen's residence. Sonju advised Swearingen as to the purpose of the visit, and told him the search was being conducted pursuant to the 1992 State Court Judgment. In response to questioning by Sonju and the federal agents – who had Mirandized him – Swearingen denied storing any child pornography on his computers.

Sonju and the agents proceeded to view files on the computer, did not see any

clearly identifiable child pornography, but did see "suspicious photographs." The federal agents then conducted an on-site search of the computer utilizing a computer software program designed to ferret out child pornography. But the agents found nothing that supported their suspicion that child pornography was stored on the computers. Nonetheless, Sonju and the federal agents effected a warrantless seziure of Swearingen's computer, subsequently conducted a warrantless search of the computers off-site, and ultimately found child pornography.

Swearingen moved to suppress the evidence of child pornography upon the ground the warrantless seizure and subsequent search of his computers violated the Fourth Amendment. Applying the rationale of *United States v. Knights*, 534 U.S. 112 (2001), this Court, then Chief Judge Donald W. Molloy presiding, concluded that the search condition contained in the 1992 State Court Judgment provided probation officer Sonju authority to not only conduct the search of Swearingen's residence but also the on-site search of the computers. The Court found that Swearingen's use of his credit card – which he produced to the officers at the time of the search – at a child pornography website provided the necessary reasonable suspicion for the searches.

The Court held, however, that the final steps taken by Sonju and the agents –

6

effecting a warrantless seizure and off-site search of the computers – violated the Fourth Amendment because the seizure and search were not authorized by the 1992 State Court Judgment or by Swearingen's reduced expectations of privacy and liberty as a probationer. The evidence of child pornography was suppressed and the indictment ultimately dismissed by the United States.

    C.    <u>The Search and Seizure under Scrutiny</u>

On January 31, 2012, two Montana state probation officers, accompanied by two local law enforcement officers, conducted a warrantless search of Swearingen's residence in Seeley Lake, Montana. During the course of the search, the officers effected a warrantless seizure of three computers, a thumb drive, and numerous CDs. The facts relating to the search and seizure are largely undisputed.[3]

On January 17, 2012, an anonymous email was sent to the Montana Department of Justice Sexual and Violent Offender Registry regarding Swearingen's internet activity on Facebook and Flickr. The email stated, in part: "On Flikr, there are pictures Jack took of pretty young girls. I doubt her Mother

---

[3] The Court's findings of fact are based upon the evidentiary hearing testimony of probation officers Chris Helms and Katie Burton, who participated in the search, and various exhibits furnished by the government and used both in briefing and at the evidentiary hearing without objection. Those exhibits included the probation officers' reports of the two participating law enforcement officers who did not testify at the hearing.

7

knows he is a repeat offending pedophile and his "love" of kids is nothing but a sham." Dkt. 16-5. The email also had a link to the Flickr accounts. Dkt. 16-5.

The email was forwarded to Swearingen's supervising probation officer Chris Helms by a deputy with the Missoula County Sheriff's Department. Helms accessed the Flickr accounts through the links and found numerous non-pornographic pictures. One of the accounts had a picture of a girl who Helms believed was under 13 years of age. And because there was a picture of Swearingen in the account, Helms concluded it was in fact Swearingen's account. While the picture of the young girl was innocuous, Helms concluded that the picture may have been derived from a photograph taken by Swearingen while in the unsupervised presence of a child.

After consulting with his superior, Helms went to Swearingen's residence looking for information about a possible probation violation, but no one answered the door. Helms proceeded to discuss the email and photograph with probation officer Katie Burton – who is an officer knowledgeable in the supervision of sex offenders. Burton agreed to go with Helms to search Swearingen's residence on January 31, 2012, the day Helms had arranged with Swearingen for a home visit. Burton undertook to enlist Missoula City Police Detective Chris Shermer and Missoula County Sheriff's Department Detective Scott King to assist them with the

8

search. According to Burton, Detective Shermer's assistance was sought because of his training regarding internet crimes against children and his expertise in conducting computer searches.

On January 31, 2012, Helms, Burton, and the two detectives met in Seeley Lake, Montana, prior to proceeding to Swearingen's residence. Burton testified that at this meeting, she specifically asked the detectives to seize Swearingen's computers and other "items."[4] At the residence, Swearingen let the probation officers and the detectives into his home. Burton testified that upon entry into the home, she saw "computers, cameras, videos, numerous CDs, devices used for storing images, and potentially pornography or other images of children." Burton then asked Swearingen about the young girl's picture on his Flickr account, showing him a copy. Swearingen admitted photographing the child, identified her as "Cassie," and stated the child's mother was present at the time. But Swearingen could not provide contact information for the child's mother.[5]

---

[4] The narrative of Detective Shermer contained in the Missoula County Sheriff's Office Inclusive Case Report ( Dkt. 16-8, at 3-4) indicates that it was during her first contact with Shermer regarding the January 31, 2012, search that Burton advised Shermer that he and King were to seize all computer devices for a later search.

[5] While Burton's report of the encounter suggests the conversation concerning the child may have occurred after the search of the residence and seizure of computers and storage devices, the Court finds based upon all the evidence presented that the

9

Burton proceeded to explain to Swearingen that the pictures of the young girl on his Flickr account constituted probable cause to search, and that the computers would be seized for an off-site search by the Montana Department of Criminal Investigation. Burton testified that she had Swearingen's computers and storage media seized in order to look for pornography. Burton also testified she was aware of the 2005 Indictment against Swearingen, because she had prepared the bond report in the case while working as an intern with the United States Probation Office.

Upon hearing Burton's explanation, Swearingen objected to the officers seizing the computers and storage media without a warrant. Burton responded that they could in fact seize the devices without a warrant under the rules of probation. Detective Shermer then asked Swearingen if they would find anything inappropriate on the computers and Swearingen responded that they would not. Whereupon, Detective Shermer seized the CDs along with the thumb drive to search them for contraband. Dkt. 16-8, at 4. Detective King took possession of the computers and other storage media to send them to the Department of Criminal Investigation for "forensic examination for contraband." Dkt. 16-8, at 3.

Burton testified that she could have used a software/thumb drive to search

---

conversation occurred prior to the search and seizure. Dkt. 42, at 11-14.

Swearingen's computers on-site for child pornography but chose not to. She also testified Detective Shermer had a laptop that possesses the capability to search computers and other electronic storage devices for child pornography but that she did not ask him to use it to conduct an on-site search of Swearingen's computers and other electronic storage devices. And the officers did not undertake an on-site search of the various CDs and thumb drive using Swearingen's computers. On February 1, 2012, Detective Shermer conducted a search of the CDs and thumb-drive seized from Swearingen using his "undercover laptop" and discovered what appeared to be child pornography.

The computers, digital camera, and videos seized from Swearingen by detective King were forwarded – and on a later date the thumb drive – to the DCI Computer Crime Unit for forensic examination. The examination revealed images of child pornography on one of the computers and the thumb drive. *See* Dkt. 16-6. A petition to revoke Swearingen's suspended sentence was filed in the State District Court. The fruits of the search and corresponding forensic examination were also presented by the Missoula County Attorney's Office to the United States Attorney's Office, and form the basis of the charges set forth in the pending Indictment.

**III. Analysis**

A. Search of Swearingen's Home

A probationer who agrees under a probation agreement to a search of his residence has a diminished expectation of privacy. *United States v. Knights*, 534 U.S. 112, 119-20 (2001). Consequently, "when an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity" the officer may effect a warrantless search of the probationer's residence. *Knights*, 534 U.S. at 120.

Similarly, a probation search also passes muster under the Fourth Amendment if it is conducted pursuant to a state law that itself satisfies the reasonableness standard of the Fourth Amendment. *United States v. Conway*, 122 F.3d 841, 842 (9th Cir. 1997) (citing *Griffin v. Wisconsin*, 483 U.S. 868 (1987)). Thus, if state law provides that a probationer's residence may be searched upon reasonable suspicion that the probationer has violated a condition of his probation, a warrantless search of his residence based upon reasonable suspicion does not run afoul of the Fourth Amendment. *Conway*, 122 F.3d at 842.

Under Montana law, a probation officer "may search the person, vehicle, and residence" of a probationer "[u]pon reasonable suspicion that the [probationer] has violated the conditions of supervision." Mont. Admin. Rule 20.7.1101; *see also*

*State v. Charlie*, 239 P.3d 934, 941 (Mont. 2010) (citations omitted).[6]
And law enforcement assistance does not render an otherwise lawful probation search invalid. *State v. Burchett*, 921 P.2d 854, 856 (Mont. 1996); *see also* Mont. Admin. Rule 20.7.1101(7) ("Probation ... officer may authorize a law enforcement agent to conduct a search, provided the probation ... officer determines reasonable suspicion exists that the offender has violated the conditions of supervision.")

Swearingen was granted probation on specific conditions of which he was unambiguously aware, including the search condition. The threshold issue presented, then, is whether the search of Swearingen's residence by probation officers Helms and Burton, assisted by local law enforcement, was supported by reasonable suspicion that Swearingen had violated a condition of his probation.

"Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing." *United States v. Hamilton*, 591 F.3d 1017, 1022 (8th Cir. 2010) (citing *United States v. Henry*, 429 F.3d 603, 609-10 (6th

---

[6] The August 9, 2002, State Court Judgment against Swearingen also provided:

3. That the Defendant's person, residence, or vehicle may be searched at any time by lawful authorities in the manner provided by law when a probation officer has reasonable grounds to believe the search will disclose evidence of a probation violation.

Cir. 2005) (utilizing a reasonable suspicion test for a *Terry* stop as articulated by the Supreme Court in *United States v. Cortez*, 449 U.S. 411, 417-18 (1981) in assessing whether parole officers had reasonable suspicion to meet the *Griffin* inquiry). Under the totality of the circumstances which existed at the time the officers entered Swearingen's residence, they had reasonable suspicion that Swearingen may have violated a condition of his supervision, i.e., Condition No. 15. "No unsupervised contact with minors under 18 unless approved by [Probation Officer] officer and [Sex Offender] therapist." Dkt. 16-4, at 2.

In *United States v. Swearingen*, CR-05-31-M (D. Mont. Nov. 7, 2005), as previously noted, Chief Judge Molloy concluded that a search condition in the 1992 State Court Judgment allowing a search of Swearingen's residence was legitimately interpreted as also allowing an on-site search of Swearingen's computer. *Swearingen*, slip op. at 8. The same holds true here. Federal courts have generally agreed that computers should be treated as if they were closed containers and the Ninth Circuit appears to be in accord. *See United States v. Blood*, 429 Fed. Appx. 670, 671 (9th Cir. 2011) (laptop computer entitled to same Fourth Amendment protections as other closed containers and personal effects). *See also*, *United States v. Bolivar*, 670 F.3d 1091, 1095-96 (9th Cir. 2012) (holding a valid probation search of a residence extends to a closed container that an officer has reasonable suspicion

14

to believe is owned, controlled, or possessed by the probationer.) As noted, however, the officers never exercised their authority to conduct an on-site search of Swearingen's computers and other electronic storage devices.

> B. <u>Seizure and Search of Swearingen's Computer and Other Storage Media Devices</u>

The warrantless seizure and off-site search of Swearingen's computers and other storage media devices in this case is indistinguishable from the seizure and off-site search of Swearingen's computers by probation officers that occurred in 2005 – the seizure and search that then Chief Judge Molloy found violative of Swearingen's Fourth Amendment rights. The United States fails to present a cogent, let alone compelling, argument that the result should be different here.

It is true, as noted by the Government, that Swearingen was unambiguously aware that his person, vehicle, and residence were subject to warrantless searches upon reasonable suspicion that he may be violating a condition of his probation. He was not, however, unambiguously advised that his computers and other items of personal property could be seized and searched off-site. This is precisely the conclusion underlying Judge Molloy's decision in the 2005 case suppressing evidence after Swearingen's probation officers effected a warrantless seizure and off-site search of Swearingen's computer.

15

The State of Montana could have, but did not, impose a condition on Swearingen's probation that he agree to the seizure and off-site search of his computers and other storage media devices upon reasonable suspicion he was engaged in criminal activity or violating the conditions of his probation. In fact, it could have precluded Swearingen from having any access to a computer or the internet. Remarkably, the State chose not to, even after its discovery in 2005 that Swearingen was in possession of child pornography. *See* Mont. Code Ann. § 46-23-1011(c) (allowing modification of probation conditions upon petition to the court).

The United States does not, nor could it successfully, argue that Judge Molloy's decision was in error. In *Texas v. Brown*, the Supreme Court explained:

> The [Fourth] Amendment protects two different interests of the citizen – the interest in retaining possession of property and the interest in maintaining personal privacy. A seizure threatens the former, a search the latter. As a matter of timing, a seizure is usually preceded by a search, but when a container is involved, the converse is often true. Significantly, the two protected interests are not always present to the same extent; for example, the seizure of a locked suitcase does not necessarily compromise the secrecy of its contents, and the search of a stopped vehicle does not necessarily deprive its owner of possession.

*Texas v. Brown*, 460 U.S. 730, 747-48 (1983) (Stevens, J. concurring).

"A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some

meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (citations omitted). In the present case, both interests are implicated because the officers effected both a warrantless seizure of Swearingen's computer and storage media devices and a warrantless search of the devices' content.

As a general matter, law enforcement officers must have a warrant to seize personal property. "A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). For instance, "[w]here law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property pending issuance of a warrant to examine its contents if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Place*, 462 U.S. 696, 701 (1983). *See also*, *United States v. Licata*, 761 F.2d 537, 542 (9th Cir. 1983) (both probable cause and exigent circumstances must exist).

The Government, of course, has the heavy burden of proving "that a seizure comes under one of the ... exceptions to the warrant requirement." *Hawkins*, 249

F.3d at 872.  *See also*, *Licata*, 761 F.2d at 543.  The Government has not sustained its burden in this case.  At the time they seized Swearingen's computers and other storage media, the officers did not have probable cause to believe that those devices held contraband or evidence of a crime.  The government does not argue otherwise.

Indeed, had the officers conducted an on-site search of Swearingen's computer and other storage media and found evidence of child pornography, or had Swearingen admitted to child pornography, the officers would have had probable cause to temporarily seize the devices to protect the destruction of evidence until they were able to secure a warrant from a neutral and detached judicial officer.  *See e.g.*, *Blood*, 429 Fed. Appx. at 671.  "But, once the agents took matters into their own hands by seizing the computer...and then conducting further searches with more sophisticated software, they went beyond the pale."  *United States v. Swearingen*, CR-05-31-M, slip. op. at 10.

In recommending that Swearingen's motion to suppress be granted, the Court bears in mind that not every Fourth Amendment violation results in exclusion of evidence.  The suppression of evidence – known as the exclusionary rule – "is a prudential doctrine[,]" not a self-executing right arising under the Fourth Amendment.  *Davis v. United States*, — U.S. —, 131 S.Ct. 2419, 2426 (2011) (citations omitted).  The rule is "a judicially created rule ... 'designed to safeguard

Fourth Amendment rights generally through its deterrent effect.'" *Herring v. United States*, 555 U.S. 135, 129-40 (2009) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). Restated, the purpose of the exclusionary rule is to compel respect for the rights protected under the Fourth Amendment, and to deter future Fourth Amendment violations. *Davis,* 131 S.Ct. at 2426.

In this case, the Court finds the need for deterrence outweighs the cost of suppressing the evidence. Based upon the nature of Swearingen's criminal convictions, and the fact that he has twice been found to be in possession of child pornography, he is undoubtedly a despicable individual. But the balance must nonetheless be struck in favor of applying the exclusionary rule where its application "serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring*, 529 U.S. at 702. The error which occurred in this case is the same error addressed and explained by Judge Molloy in 2005. It is thus fair to conclude that the error is the product of recurring and/or systemic negligence.

## IV. Conclusion

Probation officers Helms and Burton possessed the requisite reasonable suspicion to search Swearingen's residence, and his computers and storage media devices on-site for evidence that he may have had unsupervised contact with a

19

minor child in violation of his probation conditions. But the officers had no authority to seize the computers and other storage media devices for the off-site search. The warrantless seizure and off-site search violated the Fourth Amendment. Accordingly,

IT IS RECOMMENDED that Defendant's motion to suppress be GRANTED. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel on or before January 11, 2013.[7]

DATED this 8th day of January, 2013

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

---

[7] *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (the court need not give the parties the full ten day period set forth in 28 U.S.C. § 636(b)(1) within which to file objections).